| | |
|---|---|
| JOSHUA L. SCHEER #242722 | |
| REILLY D. WILKINSON #250086 | |
| SCHEER LAW GROUP, LLP | |
| 85 ARGONAUT, SUITE 202 | |
| ALISO VIEJO, CA 92656 | |
| Telephone: (949) 263-8757 | |
| Facsimile: (949) 308-7373 | |
| Email: jscheer@scheerlawgroup.com | |

Attorneys for
Twin Rivers Capital a California Corporation, $75,000.00/$90,000.00ths; Omega Realty & Lending, Inc, $15,000.00/$90,000.00ths, their successors and/or assignees

UNITED STATES BANKRUPTCY COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re: | Bk. No. 25-41405 |
| Jorge Almanza Martin Del Campo, | Chapter 11 |
| Debtor. | **CONDITIONAL OPPOSITION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**<br><br>Hearing:<br> Date: 9/12/2025<br> Time: 11:00 am<br> Place: Bankruptcy Court<br>1300 Clay St. Ctrm 125<br>Via Zoom Video Conference |

  Twin Rivers Capital a California Corporation, $75,000.00/$90,000.00ths; Omega Realty & Lending, Inc, $15,000.00/$90,000.00ths, their successors and/or assignees ("**Creditor**"), hereby submits this Opposition to Debtor's Motion for Authority to Use Cash Collateral [Docket No. 27] ("**Motion**") filed by Jorge Almanza Martin Del Campo ("**Debtor**"). This Opposition is based on the pleadings and records on file in this matter, the Declaration of Kevin Terry[1] ("**Creditor's Declaration**"), and the following memorandum. Creditor also requests that the Court take Judicial Notice of certain documents of public record and on file with this court in accordance with Federal Rule of Evidence 201.

---

[1] *See* Docket No. 33, Declaration of Kevin Terry Regarfind Notice of Security Interest in Rents & Profits.

## I. INTRODUCTION

Creditor holds a third position deed of trust on the real property located at 4824 Bancroft Avenue, Oakland, CA 94601 (the "**Property**"), a seven (7) unit rental property. Creditor has a security interest in the Property as well as the rents and profits generated ("**Cash Collateral**"). Creditor's loan matured prepetition on April 1, 2025 ("**Maturity Date**") and is fully due.

On August 29, 2025, Debtor filed the Motion. While Creditor supports the use of Cash Collateral to maintain the Property, to pay taxes, and even for payments to senior creditors, there are concerns as to Debtor paying ongoing fees *to himself* for management as well as additional concerns regarding the legitimacy of the "business" expenses listed.

At the 341 Meeting held on September 8, 2025, Debtor admitted that he had already used cash collateral during the pendency of the bankruptcy *without authorization.* Debtor also acknowledged that the Property insurance had lapsed prior to the filing of the petition. Debtor's Motion also shows an estimated Municipal Utility District lien on the Property, presumably for unpaid utilities, showing that Debtor has been unable to maintain even the normal payments in the past.

Given these concerns, Creditor requests additional adequate protection, including, but not limited to, proof of insurance with Creditor listed as a loss payee, a more detailed budget, and an explanation /accounting as to the proposed monthly budget of expenses listed in the Motion. Creditor should not make any payments to himself or for personal expenses without authorization.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

**The Loan and Property**

Creditor is the current payee of a Promissory Note dated March 5, 2024 in the principal amount of $90,000, secured by a third Deed of Trust which encumbers the Property.[2] Creditor has an interest in the rents and profits generated by the Property, pursuant to the terms of the Deed of Trust.[3] The loan matured on April 1, 2025 and remains unpaid.[4]

---

[2] *See* Creditor's Declaration, Par. 3.
[3] *See* Creditor's Declaration, Par. 5.
[4] *See* Creditor's Declaration, Par. 6.

**Debtor's Petition**

On August 4, 2025, Debtor filed a petition under Chapter 11 of the bankruptcy code, Case No. 25-41405. The total amount of Creditor's claim *as of the Petition Date* is approximately $113,027.23 and continues to accrue interest, fees and costs.[5]

**Debtor's Motion for Order Authorizing Use of Cash Collateral**

On August 29, 2025, the Debtor filed the Motion seeking authorization to use cash collateral generated from rents or accounts receivable relating to the Property.

In his Motion, the Debtor states that he currently receives $12,463 in rental income. The Motion also provides a proposed monthly budget of expenses totaling to $6,759.38. For the budget provided, the Debtor includes payments for the following items which Creditor asserts require additional explanation/information: Management Expense - $1,700.00, Phone - $225.00, Truck Insurance $215.03, Gas for Truck - $225.00.

### III.  OPPOSITION

**A.  Debtor's Motion Fails to Provide Adequate Protection as Required**

Standard for Adequate Protection

In order to determine whether a creditor is adequately protected for purposes of a 11 U.S.C. § 363 motion, the burden is on the Trustee [or Debtor in Possession] (*See* 11 U.S.C. § 363(p)).  The Debtor must show by a preponderance of the evidence, that the interests of its creditors are adequately protected. *In re Scottsdale Med. Pavilion*, 159 B.R. 295 (9th Cir. BAP 1988).  While an equity cushion can provide adequate protection, the court is required to protect the existing interest of the creditor in the collateral from diminution (*See In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988).  Generally, in determining whether adequate protection is available, a court may consider: (1) the value of the secured creditor's interest; (2) risks to the secured creditor's value resulting from debtor's request for use of said cash collateral; and (3) whether debtor's adequate protection proposal protects the value as nearly as possible against the risks to that value consistent with the concept of indubitable equivalence. *See In re Martin*, 761 F.2d 472, 476-477 (8th Cir. 1985). The burden of proving a

---

[5] *See Creditor's Declaration, Par. 7.*

creditor is adequately protected rests with the debtor. *See* 11 U.S.C. §363(p)(1). 11 U.S.C. §363(c)(2) prohibits a debtor in possession from using cash collateral without either (1) the consent of each creditor with interest in the collateral or (2) court authorization, granted after a notice and a hearing. *See Wattson Pac. Ventures v. Valley Fed. Sav. & Loan (In re Scottsdale Med. Pavilion),* 159 B.R. 295, 297 (9th Cir. BAP 1993), *aff'd,* 52 F.3d 244 (9th Cir.1995); *In Re Rebel Rents, Inc.*, 307 B.R. 171 (Bankr. C.D. Cal. 2004).

Here, the Debtor does not provide or propose adequate protection for creditors. Debtor appears to admit a lack of equity in the Property, yet does not propose any adequate protection payments to *any* of the three (3) secured creditors on the Property. Instead, it is assumed that Debtor proposes to hold the remaining funds for his own purposes. While amassing some surplus would not typically raise a "red flag", given the history of mismanagement (lapsed insurance, missed taxes, utility lien, as examples) and admitted misuse of cash collateral since the filing, entrusting these funds to the Debtor is of significant concern and should not be allowed.

**B. It is Unclear Whether the Cash Collateral is Segregated as Required by Code**

Absent consent or court authorization, a debtor in possession has an affirmative duty to segregate and account for any cash collateral in its possession, custody or control. 11 U.S.C § 363(c)(4). Segregation of cash collateral, including rents in which a creditor has a security interest, is mandatory under the statute. *Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. (In re Scottsdale Med. Pavillion),* 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993). Segregation of cash collateral is important to secured creditors, particularly in view of the state law requirement that a creditor be able to identify cash proceeds to maintain an interest in such proceeds. *See generally* 3 *Collier on Bankruptcy* ¶ 363.03[4][b], at 363-35 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2003). Section 363(c)(2)'s proscription recognizes the "unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral in a rehabilitative effort in bankruptcy." *Id.*¶ 363.03[4][c], at 363-36. Section 363(c)(4) requires a trustee to segregate and account for any cash collateral in the trustee's possession, custody or control. In the absence of authorization to

4

use cash collateral, the trustee is responsible for maintaining the collateral for the protection of the creditor with an interest in the collateral. Segregation of cash collateral is also important to secured creditors in view of the requirement of nonbankruptcy law that a creditor be able to identify cash proceeds to maintain an interest in the proceeds.

The segregation requirement applies to cash collateral on hand at the time of filing as well as to cash generated during the case through the accumulation of after-acquired cash, such as rents or hotel revenues or from the use, sale or lease of non-cash collateral and payments for inventory or receivables. When the trustee has previously been authorized to use cash collateral, a common component of the adequate protection afforded the affected entity is an appropriate accounting. 3 Collier on Bankruptcy P 363.03 (16th 2021) (emphasis added), citing *Scottsdale Medical Pavilion v. Mutual Benefit Life Ins. in Rehabilitation (In re Scottsdale Medical Pavilion),* 159 B.R. 295 (B.A.P. 9th Cir. 1993), *aff'd*, 52 F.3d 244 (9th Cir. 1995) (rents collected prepetition are cash collateral and subject to the use limitations of section 363).

This issue of Cash Collateral segregation is compounded by the fact that the proposed use appears to blend both business and personal expenses. For example, Debtor lists in his Motion expenses for "Phone", "Gas for Truck", and "Truck Insurance", all which would presumably be for his own use (or at least mixed use), not for the Property. Debtor also lists "Management Expense" of $1,700, presumably paid to himself for management of the Property. Even taking aside whether there is an actual agreement for payment of management expenses or the extent of work performed in consideration of the $1,700, this further blurs the line of personal versus business use. It is clear that the Debtor has not, and does not, segregate the Cash Collateral and instead uses the rent for his own purposes. This should not be allowed.

### IV. CONCLUSION

For the reasons stated herein, the Motion should be denied or granted only on a limited basis so as to pay for only the necessary expenses on the Property without any personal expenses and also to provide additional adequate protection payments to creditors.

SCHEER LAW GROUP, LLP

DATED: September 11, 2025  /s/JOSHUA L. SCHEER
#242722