| | |
|---|---|
| 1 | JOSHUA L. SCHEER #242722 |
| | REILLY D. WILKINSON #250086 |
| 2 | SCHEER LAW GROUP, LLP |
| | 85 ARGONAUT, SUITE 202 |
| 3 | ALISO VIEJO, CA 92656 |
| | Telephone: (949) 263-8757 |
| 4 | Facsimile: (949) 308-7373 |
| | Email: jscheer@scheerlawgroup.com |
| 5 | |
| 6 | Attorneys for Secured Creditors |
| | Twin Rivers Capital a California Corporation, $75,000.00/$90,000.00ths; Omega Realty & Lending, Inc, $15,000.00/$90,000.00ths, and |
| 7 | Chin-Chai Low and Lai-Fen Wong, Trustees of the Low/Wong Family Trust dated September 9, 1999, and any amendments thereto, $150,000.00/$350,000.00ths; Barry L. Chin and Susan Y. |
| 8 | Chin, Trustees, or their successors in trust, under the Chin Living Trust, dated April 13, 2001 and |
| 9 | any amendments thereto, $100,000.00/$350,000.00ths; Siva Uppalapati and Padma Uppalapati, as CO-Trustees of the Uppasana22 Family Trust, U/A dated November 8, 2022; |
| 10 | $100,000.00/$350,000.00ths |

UNITED STATES BANKRUPTCY COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| 14 | In re: | Bk. No. 25-41405 |
| 15 | Jorge Almanza Martin Del Campo, | Chapter 11 |
| 16 | | |
| 17 | Debtor. | **SUPPLEMENTAL OPPOSITION TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL** |
| 18 | | |
| 19 | | Hearing: |
| | | Date: 9/25/2025 |
| 20 | | Time: 11:00 am |
| | | Place: Bankruptcy Court |
| 21 | | 1300 Clay St. Ctrm 215 |
| | | **Via Zoom Video Conference** |

Twin Rivers Capital a California Corporation, $75,000.00/$90,000.00ths; Omega Realty & Lending, Inc, $15,000.00/$90,000.00ths ("**Twin Rivers**"), and Chin-Chai Low and Lai-Fen Wong, Trustees of the Low/Wong Family Trust dated September 9, 1999, and any amendments thereto, $150,000.00/$350,000.00ths; Barry L. Chin and Susan Y. Chin, Trustees, or their successors in trust, under the Chin Living Trust, dated April 13, 2001 and any amendments thereto, $100,000.00/$350,000.00ths; Siva Uppalapati and Padma Uppalapati, as CO-Trustees of

the Uppasana22 Family Trust, U/A dated November 8, 2022, $100,000.00/$350,000.00ths ("**Low Creditors**"), collectively "**Secured Creditors**," hereby jointly submit this supplemental opposition ("**Supplemental Opposition**") to Debtor's Motion for Authority to Use Cash Collateral [Docket No. 27] ("**Motion**") filed by Jorge Almanza Martin Del Campo ("**Debtor**").

This Supplemental Opposition is based on the pleadings and records on file in this matter, the Conditional Opposition to Debtor's Motion for Authority to Use Cash Collateral [Docket No. 34] filed by Twin Rivers ("**Twin Rivers Opposition**"), the Declaration of Joshua Scheer ("**Scheer Declaration**") and the following memorandum. Secured Creditors also request that the Court take Judicial Notice of certain documents of public record and on file with this court in accordance with Federal Rule of Evidence 201.

## I. INTRODUCTION AND RELEVANT FACTS

The Low Creditors and Twin Rivers, hold the second and third trust deeds on the real property located at 4824 Bancroft Avenue, Oakland, CA 94601 ("**Property**"), respectively. The Property is a seven (7) unit rental property generating the Debtor's only source of income. However, this "income" is the cash collateral ("**Cash Collateral**") of Secured Creditors and authorization must be obtained for use. Despite this requirement, the Debtor has admittedly used the Cash Collateral to pay other creditors and for his own personal expenses.

On August 29, 2025, Debtor filed the Motion, but did not notice it properly. No time to file an opposition was included in the notice.

On September 8, 2025, at the Debtor's 341 Meeting, Debtor acknowledged and admitted that he had *already used* cash collateral during the pendency of the Bankruptcy without authorization **and** that insurance had previously lapsed on the Property. Debtor's Motion also showed an estimated Municipal Utility District lien on the Property, presumably for unpaid utilities, showing that Debtor has been unable to maintain even the normal payments in the past.

On September 11, 2025, Twin Rivers filed the Twin Rivers Opposition to address the deficiencies from the 341 Meeting and the Motion as described above.

On September 12, 2025, a hearing on the use of Cash Collateral was held. Given the lack of notice and concerns raised by Twin Rivers and the U.S. Trustee at the hearing, the Court

2

continued the hearing until September 25, 2025 and, in the interim, required that the Debtor provide 1) proof of insurance on the Property and 2) bank statements for the past two months.

On September 12, 2025, Debtor's counsel provided Secured Creditors' counsel proof of insurance on the Property. However, the policy **did not include** Secured Creditors as "additional insured" as required. A revised certificate (and endorsements as applicable) showing the parties as additional insured was requested, along with a copy of the actual policy. As of the date of this Supplemental Opposition the requested information and updated policy has not been provided.[1]

On September 19, 2025, Debtor provided Secured Creditors with a copy of the bank statements from June 18, 2025 to July 21, 2025, July 22, 2025 to August 19, 2025, and a Statement Summary for the period of August 19, 2025 to September 18, 2025.[2] On September 21, 2025, Debtor filed the Operating Report for August 2025 ("**August MOR**"), detailing the same figures.[3]

A review of the Bank Statements and August MOR confirm the statements by the Debtor at the 341 meeting that Cash Collateral has been used without authorization. For example:

- On August 1, 2025 the Debtor withdrew $3,000 from the account to repay a "loan";
- On August 6, 2025 the Debtor paid $372.85 to Westlake Financial for his vehicle loan;
- On August 12, 2025 the Debtor paid $124.03 to Acima for a loan for his tires;
- The Debtor admits to spending $6,406.19 in "cash collateral" without[4] approval, including $748.62 for personal expenses;

In the Motion, Debtor asserts that Cash Collateral is generated in the amount of **$12,463**, assuming that the currently vacant 4826 Bancroft Ave unit is rented for $2,000. From Secured Creditors' Cash Collateral Debtor proposes a monthly budget with following expenses:

| | |
|---|---|
| Property Tax | $1,937.36 |
| Property Insurance | $500.00 |
| Oakland RAP Fee $187.00 PGE (electricity) | $270.00 |
| EDMUD (water & sewer) | $550.00 |
| Waste Management (garbage) | $450.00 |
| Repairs to Building | $500.00 |
| Truck Insurance | $215.03 |
| Gas for Truck | $225.00 |
| Phone | $225.00 |

---

[1] See Scheer Declaration, Paragraph 3.
[2] See Scheer Declaration, Paragraph 4.
[3] See Docket Number 39.
[4] The MOR says "**with**" approval, however Secured Creditors assume this was a typo as no authority was provided.

| | |
|---|---|
| Management Expense | $1,700.00 |
| Total Monthly Expenses | **$6,759.38** |

Despite allegedly having almost $6,000 in excess cash each month, Debtor does not propose any payments to Secured Creditors for adequate protection, but instead proposes $1,700 as a management fee to himself. Debtor asserts that the creditors are adequately protected by the "future rents" from the Property and the appreciating value.[5] However, the Debtor lists the value of the Property at only $970,000 and liens totaling well over a $1,200,000. While Secured Creditors do not agree with the valuation, the Debtor is acknowledging that the Secured Creditors are not protected by an equity cushion.

According to the MOR, Debtor appears to be using his own checking account and has not set up a DIP account since the filing.

## II. SUPPLEMENTAL OPPOSITION

### A. Debtor's Motion Fails to Provide Adequate Protection as Required

As detailed in the Twin Rivers Opposition, in order to determine whether a creditor is adequately protected for purposes of a 11 U.S.C. § 363 motion, the burden is on the Trustee [or Debtor in Possession] (*See* 11 U.S.C. § 363(p)). The Debtor must show by a preponderance of the evidence, that the interests of its creditors are adequately protected. *In re Scottsdale Med. Pavilion*, 159 B.R. 295 (9th Cir. BAP 1988). While an equity cushion can provide adequate protection, the court is required to protect the existing interest of the creditor in the collateral from diminution (*See In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988). Generally, in determining whether adequate protection is available, a court may consider: (1) the value of the secured creditor's interest; (2) risks to the secured creditor's value resulting from debtor's request for use of said cash collateral; and (3) whether debtor's adequate protection proposal protects the value as nearly as possible against the risks to that value consistent with the concept of indubitable equivalence. *See In re Martin*, 761 F.2d 472, 476-477 (8th Cir. 1985). The burden of proving a creditor is adequately protected rests with the debtor. *See* 11 U.S.C.

---

[5] *See* Debtor Dec, Par. 9.

§363(p)(1). 11 U.S.C. §363(c)(2) prohibits a debtor in possession from using cash collateral without either (1) the consent of each creditor with interest in the collateral or (2) court authorization, granted after a notice and a hearing. *See Wattson Pac. Ventures v. Valley Fed. Sav. & Loan (In re Scottsdale Med. Pavilion),* 159 B.R. 295, 297 (9th Cir. BAP 1993), *aff'd,* 52 F.3d 244 (9th Cir.1995); *In Re Rebel Rents, Inc.*, 307 B.R. 171 (Bankr. C.D. Cal. 2004).

Since the last hearing, the Debtor has not offered or proposed any additional adequate protection. While Secured Creditors understand that the Debtor needs to use the Cash Collateral for certain expenses, it should not come at the expense of Secured Creditor. The Debtor has already admitted to using funds to pay "insiders" and for his own personal expenses since the filing. Since the last hearing, the picture has only gotten worse.

<u>Lack of Valid Insurance</u>

The Debtor has provided proof of insurance as required, but has not provided an updated policy and confirmation that the Secured Creditors are listed as additional insureds as required. This puts Secured Creditors in immediate jeopardy especially given the status of the Property.

<u>Lack of Equity</u>

Debtor asserts a lack of equity in the Property, yet does not propose any adequate protection payments to *any* of the three (3) secured creditors on the Property. The value of the Property, *while potentially higher*[6], is listed at only $970,000 with liens totaling over $1,200,000 by Debtor's own numbers. The only "protection" Debtor offers is an alleged appreciation with no explanation except for the Debtor's declaration.

<u>Misuse of Cash Collateral</u>

The Debtor admits misuse of cash collateral in his own MORs. This was also confirmed at the 341 Meeting and the Motion hearing and is confirmed by the bank statements provided. The funds are not segregated, are comingled with his own personal expenses and remain in his own personal account given that he admittedly has not opened a DIP account almost two months

---

[6] The Debtor appears to assert a "low" value for purposes of showing that the Twin Rivers lien can be modified or stripped. Secured Creditors do not believe this value is accurate given prior representations and valuations. However, this "cuts both ways" as it shows that Debtor is acknowledging that the Secured Creditors are not adequately protected by any equity cushion. It also calls into question the viability of this Bankruptcy as a whole. There are not sufficient funds to pay creditors and is not sufficient equity to sell or refinance.

into the case. This would be concerning in any scenario, but provides even more concern given that the Debtor is admittedly using the funds for his own purposes (and without authorization) at the expense of Secured Creditors who are not otherwise adequately protected.

Utility Liens

The East Bay Municipal Utility District has filed a lien on the Property, meaning the Debtor has previously failed to maintain even the utility liens on the Property. How can Debtor be assured of continued payment of these liens even if he is authorized use?

Given the history of mismanagement (lapsed insurance, missed taxes and utility liens, as examples) and admitted misuse of cash collateral since the filing, entrusting these funds to the Debtor is of significant concern and should not be allowed. The Secured Creditors are not adequately protected and the Motion should be denied.

**B. It is Unclear Whether the Cash Collateral is Segregated as Required by Code**

Absent consent or court authorization, a debtor in possession has an affirmative duty to segregate and account for any cash collateral in its possession, custody or control. 11 U.S.C § 363(c)(4). Segregation of cash collateral, including rents in which a creditor has a security interest, is mandatory under the statute. *Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. (In re Scottsdale Med. Pavillion),* 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993). Segregation of cash collateral is important to secured creditors, particularly in view of the state law requirement that a creditor be able to identify cash proceeds to maintain an interest in such proceeds. *See generally* 3 *Collier on Bankruptcy* ¶ 363.03[4][b], at 363-35 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2003). Section 363(c)(2)'s proscription recognizes the "unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral in a rehabilitative effort in bankruptcy." *Id.*¶ 363.03[4][c], at 363-36. Section 363(c)(4) requires a trustee to segregate and account for any cash collateral in the trustee's possession, custody or control. In the absence of authorization to use cash collateral, the trustee is responsible for maintaining the collateral for the protection of the creditor with an interest in the collateral. Segregation of cash collateral is also important to

secured creditors in view of the requirement of nonbankruptcy law that a creditor be able to identify cash proceeds to maintain an interest in the proceeds.

The segregation requirement applies to cash collateral on hand at the time of filing as well as to cash generated during the case through the accumulation of after-acquired cash, such as rents or hotel revenues or from the use, sale or lease of non-cash collateral and payments for inventory or receivables. When the trustee has previously been authorized to use cash collateral, a common component of the adequate protection afforded the affected entity is an appropriate accounting. 3 Collier on Bankruptcy P 363.03 (16th 2021) (emphasis added), citing *Scottsdale Medical Pavilion v. Mutual Benefit Life Ins. in Rehabilitation (In re Scottsdale Medical Pavilion),* 159 B.R. 295 (B.A.P. 9th Cir. 1993), *aff'd*, 52 F.3d 244 (9th Cir. 1995) (rents collected prepetition are cash collateral and subject to the use limitations of section 363).

As detailed in the Twin Rivers Opposition and confirmed at the hearing on the Motion, this issue of Cash Collateral segregation is compounded by the fact that the proposed use appears to blend both business and personal expenses. Debtor admittedly has no other income and instead has been using the rents for his own purposes (and without any authorization). It is clear that the Debtor has not, and does not, segregate the Cash Collateral and instead uses the rent for his own purposes. He has not even set up a DIP account as is required.

### III. CONCLUSION

The Debtor has not provided adequate protection to Secured Creditors as required and has not segregated Cash Collateral and the Motion should be denied. More importantly this calls into question the Debtor's ability to even continue as a Chapter 11 Debtor. While Secured Creditors understand and acknowledge the need to use funds from rents to pay necessary Property expenses and general living expenses (assuming no other source of income), this is not the purpose of Chapter 11. There is no ability or means to reorganize in a scenario where the Debtor has admitted a lack of equity, admitted that the funds are not sufficient to pay all creditors, cannot even open a DIP account, cannot provide valid insurance, and has admittedly misused cash collateral. This Bankruptcy is a means to stall foreclosure, not to reorganize and

allowing the Debtor continued use of Cash Collateral when he has failed to meet the bare minimum requirements of a Chapter 11, should not be allowed.

SCHEER LAW GROUP, LLP

DATED: September 24, 2025　　　　　　　　/s/JOSHUA L. SCHEER
　　　　　　　　　　　　　　　　　　　　　　#242722